UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00082-TBR

CHRIS BELT and MYCHAL DENALE DAVIS,
Co-Administrators of the Estates of Candida Darlene Belt, and
CHRIS BELT and MYCHAL DENALE DAVIS, individually           Plaintiffs,

v.

EDWARD TYRONE CARTER,
LESLIE ALLEN DUNCAN, and
THE CITY OF OAK GROVE, KENTUCKY                            Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Motion to Dismiss filed by the City of Oak Grove, Kentucky, (Docket No. 22; Amended Memorandum at Docket No. 28). Plaintiffs Chris Belt and Mychal Denale Davis, both individually and as Co-Administrators of the Estate of Candida Darlene Belt, have responded, (Docket No. 29), and Defendants have replied, (Docket No. 30). Fully briefed, the matter stands ripe for adjudication. For the reasons set forth below, the Court will DENY Oak Grove's Motion to Dismiss.

**Factual Background**

Unless otherwise noted, Plaintiffs allege the following facts in support of their claims. Throughout 1993 and 1994, Defendants Edward Carter, Leslie Duncan, and other police officers for the City of Oak Grove, Kentucky, frequented the New Life Massage Parlor, a local business that doubled as a brothel. The officers extorted cash, equipment, and other compensation from New Life employees, threatening criminal prosecution if they did not acquiesce. Such employees included eighteen year-old Gloria Ann Ross and twenty-two year-old Candida Darlene Belt. Candida's elder son, Christopher Belt, was born in 1989, and her second son, Mychal Denale Davis, was born in Summer 1994. (*See* Docket No. 28-1 at 5.) On September 20, 1994, Gloria Ross and Candida Belt were shot and stabbed to death in

the massage parlor's back room. Plaintiffs now allege that Defendants Edward Carter and Leslie Duncan, both Oak Grove City Police officers, murdered their mother.

Acknowledging that nearly two decades elapsed between the alleged murders and the filing of their Complaint, Plaintiffs submit that Defendant Duncan manipulated and destroyed evidence at the scene in order to conceal the identities of those responsible for the murder. On September 23, 2013, Duncan pleaded guilty to Tampering with Physical Evidence, Concealing Physical Evidence and/or Destroying Physical Evidence. Plaintiffs allege that Duncan's actions hindered the investigations of the Kentucky State Police and the Christian County Sheriff's Office. Plaintiffs further contend that without sufficient proof to discern who caused their mother's death, they were unable to initiate litigation, either individually on behalf of Candida Belt's estate.

This uncertainty persisted until November 15, 2013, when Duncan was indicted for Complicity to Commit Murder and Carter was indicted for First Degree Murder.[1] Plaintiffs then filed this action on April 29, 2014, alleging that Defendants deprived their mother of her constitutional rights to due process of law and raising claims of battery and wrongful death, loss of consortium, and intentional infliction of emotional distress.

## Legal Standard

Federal Rule of Civil Procedure 12(b) provides for the dismissal of claims and parties for seven reasons, including dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12 continues:

> (d) Resulting of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All the parties shall be given

---

[1] Although Frank Black, Jr., was also indicted for two counts of First Degree Murder, Plaintiffs have not named him as a defendant in the instant lawsuit.

2

> reasonable opportunity to present all material made pertinent to the motion.

Accordingly, Rule 12(d) permits a 12(b)(6) motion to be converted into a motion for summary judgment. Because Defendants have submitted and the Court has considered several newspaper articles extrinsic to the face of the Complaint, the Court will apply summary judgment standards. *See Mays v. Buckeye Rural Elec. Co-Op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002) (district court may consider motion to dismiss as one for summary judgment when invited to consider matters outside the pleadings).

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The movant must offer more than a mere scintilla of evidence in support of his position; rather, he must present sufficient evidence to allow the trier of fact to reasonably find in his favor. *See id.* (citing *Anderson*, 477 U.S. at 252). Summary judgment is inappropriate only if the parties genuinely dispute an issue of material fact; mere speculation will not defeat such a motion. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

**Analysis**

I.      **KRS 395.010 does not bar claims raised on behalf of Candida Belt's estate.**

The Court will first address Defendants' argument that each of the claims raised on behalf of Candida Belt's estate must be dismissed because administration of the estate was not timely initiated. KRS 395.010 provides, "Original administration shall not be granted after the expiration of ten (10) years from the death of the testator or intestate and if made after that time, it shall be void." *Id.* Although it appears that no personal representative was appointed within ten years of Candida Belt's death, the Christian District Court appointed Chris Belt and Mychal Denale Davis as co-administrators of her estate on April 11, 2014. (*See* Docket No. 22-2.) Defendants argue that KRS 395.010 renders this appointment, made nearly twenty years after Candida Belt's death, void.

Plaintiffs respond that upon obtaining a recording of the grand jury proceedings that resulted in Defendants' indictment, Plaintiffs moved quickly for appointment as co-administrators in order to file their Complaint. They emphasize the obstacles they faced in ascertaining the identities of those responsible for Candida Belt's death, arguing that the doctrine of equitable tolling and the discovery rule save their claims. But while Plaintiffs' arguments are properly situated in the statute of limitations context discussed *infra*, their significance is less apparent here. By creating a ten-year window during which representatives may raise claims on an estate's behalf, KRS 395.010 may result in a *de facto* statute of limitations for such claims. On its face, however, the statute merely establishes an unambiguous period during which administration may be granted; it neither creates nor appears to contemplate causes of action in tort. Straightforward application of the statute would negate Chris Belt and Mychal Denale Davis's appointment as co-administrators, leaving them without standing to assert claims on behalf of their mother's estate. *See* KRS 411.130(1) (requiring wrongful death actions to be prosecuted by the personal representative of the deceased).

Despite the unequivocal nature of the statute, however, the Court is apprehensive of its effects under these unique and tragic circumstances. Plaintiffs were young children at the time of their mother's

death; they bear no responsibility for any mismanagement of the estate two decades ago. To leave them without recourse on this basis would be patently inequitable. Kentucky case law is virtually silent as to KRS 395.010, and its legislative history offers no guidance. However, the Court is confident that the General Assembly could not have intended to close the courthouse doors to wrongful death victims' minor descendants, who are barred from bringing lawsuits upon reaching majority if no personal representative was appointed within the designated ten-year period.

To allow Defendants' conception of the statute would render it a virtual state of repose, barring Plaintiffs' cause of action arguably before the claim accrued and certainly before Plaintiffs reached the age of majority. *McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 18 (Ky. 1990) (distinguishing statutes of limitations, which limit the time in which a plaintiff may bring suit after a cause of action accrues, from statutes of repose, which "potentially bar the plaintiff's suit before the cause of action arises.") (citation omitted). If applied without reference to the discovery rule or the doctrine of equitable tolling, this statutory ten-year period requires Plaintiffs "to do the impossible—sue before [they] had any reason to know they should sue," a requirement that is "antithetical to the purpose of the open courts provisions in the Kentucky Constitution." *Id.* at 19. These provisions "prohibit the abolition or diminution of legal remedies for personal injuries and wrongful death . . . a theme that has appeared in Kentucky's constitution since 1792." *Id.* (citing *Carney v. Moody*, 646 S.W.2d 40 (1982)).[2] *See also*

---

[2] The "open courts" provisions consist of three sections of the Kentucky Constitution—Sections 14, 54, and 241. Section 14 states:

> All courts shall be open, and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay.

Section 54 states:

> The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.

Section 241 states:

> Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered

*Saylor v. Hall*, 497 S.W.2d 218 (Ky. 1973) (holding statute of repose barring a claim before it exists impermissible if it destroys a constitutionally protected right).

Furthermore, the Court is concerned that application of this statute would penalize Plaintiffs due to their age. Although Plaintiffs were entitled to access the courts during their minority, they could exercise that right only through the assiduity of others. For whatever reason, Plaintiffs' guardians did not assert claims on their behalf during the statutory ten-year period, during which Plaintiffs were minors. The law contemplates such a scenario: in an effort to protect the legal rights of minors, the tradition for nearly four centuries has been that the statute of limitations is tolled until a minor reaches his eighteenth birthday. *See Developments in the Law—Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1229 (1950). As discussed *infra*, this rule applies in Kentucky. But rote application of KRS 395.010 would thwart this protection, punishing Plaintiffs for the failure of others to seek appointment of an administrator. Such an outcome imposes an insurmountable obstacle to Plaintiffs' right of access to the courts and leaves them without remedy. This Court is reluctant to enforce a statute that raises these constitutional red flags.

As the Kentucky Supreme Court has explained, "Fundamental fairness is part and parcel of the concept underlying the rights guaranteed to us by our constitution; and, conversely, the various sections in it protecting individual rights from legislative interference cannot be understood or applied without reference to fundamental fairness." *Perkins v. Northeastern Log Homes*, 808 S.W.2d 809, 816 (Ky. App. 1991). The framers' "manifest purpose" was "to preserve and perpetuate the common-law right of a citizen injured by the negligent act of another to sue to recover damages for his injury." *Id.* at 815-16 (citing *Ludwig v. Johnson*, 49 S.W.2d 347, 351 (Ky. 1932)). Relying upon the precedents cited above, and affording the broad protections intended by the Commonwealth's constitution, the Court predicts that

---

for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person.

6

the Kentucky Supreme Court would conclude that KRS 395.010 does not require dismissal of Plaintiffs' claims. *See Himmel v. Ford Motor Co.*, 342 F.3d 593, 698 (6th Cir. 2003) (a federal court addressing a state law issue not addressed by the applicable state court must try to predict what the state's highest court would do "if confronted with the same question.") (citation omitted).  Accordingly, the Court declines to dismiss Plaintiffs' claims on this basis.

> II.  **Because material issues of fact remain unresolved, the Court will not grant summary judgment in Defendants' favor.**

Turning next to the claims alleged in both cases, Defendants primarily argue that the Court must dismiss Plaintiffs' claims as time-barred.  They point to KRS 413.180, which establishes certain time limitations during which a personal representative of the deceased may bring an action.  The statute provides in full:

> (1) If a person entitled to bring any action mentioned in KRS 413.090 to 413.160 dies before the expiration of the time limited for its commencement and the cause of action survives, the action may be brought by his personal representative after the expiration of that time, if commenced within one (1) year after the qualification of the representative.
>
> (2) If a person dies before the time at which the right to bring any action mentioned in KRS 413.090 to 413.160 would have accrued to him if he had continued alive, and there is an interval of more than one (1) year between his death and the qualification of his personal representative, that representative, for purposes of this chapter shall be deemed to have qualified on the last day of the one-year period.

KRS 413.140, which establishes a one-year limitations period for personal injury actions, is among the statutes to which KRS 413.180 purports to apply.  Accordingly, Plaintiffs' actions for battery, loss of consortium, and intentional infliction of emotional distress are subject to this one-year limitations period.  *See* KRS 413.140(1)(a) (requiring "[a]n action for injury to the person of the plaintiff" to be commenced one within one year after the cause of action accrued).  Furthermore, because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal

injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275-80 (1985). Thus, in Kentucky, § 1983 actions are limited the same one-year statute of limitations found in KRS 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Defendants argue that these limitations periods render Plaintiffs' claims for battery, loss of consortium, intentional infliction of emotional distress, and violation of § 1983 untimely.

KRS 411.130, which establishes a cause of action for wrongful death, is not among the statutes referenced by KRS 413.180. Nonetheless, Kentucky courts have recognized that this provision establishes a one-year statute of limitations for wrongful death claims. *See Conner v. George W. Whitesides Co.*, 834 S.W.2d 652, 653-54 (Ky. 1992) (citing *Carden v. Louisville & N.R. Co.*, 39 S.W. 1027 (1897)). Kentucky law is clear: "'If a personal representative is appointed within one year of the date of death, he then is granted one year from the date of his appointment to file suit. If no suit is filed within that time, the action for wrongful death dies.'" *Conner*, 834 S.W.2d at 654 (quoting *Southeastern Ky. Baptist Hosp. v. Gaylor*, 756 S.W.2d 467, 470 (Ky. 1988)); *see also Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 641-42 (6th Cir. 1986). Generally, then, a decedent's personal representative must prosecute a wrongful death action must raise the claim within two years from the date of the decedent's death. *See Gaylor*, 756 S.W.2d at 470 (Ky. 1988); *Gaither v. Commonwealth*, 161 S.W.3d 345, 347-48 (Ky. Ct. App. 2004).

The limitation period of KRS 413.140(1) began to run on September 20, 1994, the date of Candida Belt's death. *See Farmers Bank & Trust Co. v. Rice*, 674 S.W.2d 510, 512 (Ky. 1984). As discussed above, Chris Belt and Mychal Denale Davis were appointed co-administrators of Candida Belt's estate on April 11, 2014, well over a year after her death. Kentucky law provides that if the personal representative is appointed more than a year after the decedent's date of death, the one year-anniversary of the death is considered the date of appointment—here, September 20, 1995. The personal representative then has one year from the anniversary of the death to commence a cause of action. Plaintiffs did not commence an action within this two-year period, but initiated the instant litigation on

April 4, 2014—nearly eighteen years beyond its expiration. Accordingly, Defendants urge the Court to dismiss the actions.

But these statutes of limitations are not necessarily determinative. The Court notes that Kentucky's saving statute tolls the running of the statute of limitations for Plaintiffs' loss of consortium claims, raised in their individual capacities, due to their infancy. KRS 413.170(1) extends the limitations period if the individual entitled to raise the claim was an infant when the cause of action arose. The statute of limitations is tolled until a party reaches eighteen years of age. KRS 413.170(1) (allowing one who was an infant at the time a cause of action accrued to bring the action "within the same number of years after the removal of the disability . . . allowed to a person without the disability to bring the action after the right accrued."); KRS 2.015 (establishing age of majority). *See Hammers v. Plunk*, 374 S.W.3d 324, 331 (Ky. Ct. App. 2011) (limitations period for children's loss of parental consortium claim was tolled due to their infancy per KRS 413.170). However, given the Plaintiffs' ages, this statute alone does not save their claims. Chris Belt turned eighteen years old in 2007, leaving him until 2008 to file his Complaint; Mychal Davis turned eighteen in 2012, allowing him until 2013. Without more, Plaintiffs' Complaint of April 29, 2014, remains untimely.

Plaintiffs assert that this delay does not prove fatal, arguing that the limitations periods as to each of their claims—both those raised in her individual capacity and on behalf of their mother's estate—were tolled by Duncan's concealment of the murder, manifested by his guilty plea to tampering with evidence. Here, Plaintiffs insist that despite diligent efforts to investigate the murders, their attempts yielded only speculation, leaving them with no factual basis upon which to assert their claims. Only when Defendants were indicted on November 15, 2013, were Plaintiffs able to ascertain the appropriate objects of their lawsuit. (Docket No. 29-1 at 2-4.)

Plaintiffs correctly state that when a defendant causes a plaintiff to fail to timely file suit by fraudulently concealing information, he cannot then rely upon the statute of limitations defense. *See* KRS

413.190(2). "[W]hen a wrongdoer intentionally conceals his unlawful act the statute of limitations begins or run when the person injured learns of the unlawful act rather than from the time of commission of the act." *Resthaven Memorial Cemetery v. Volk*, 150 S.W.2d 908, 912 (1941). Such concealment includes efforts to prevent the plaintiff from inquiring into the action, eluding such investigation, or otherwise misleading him. *Hazel v. Gen. Motors Corp.*, 863 F. Supp. 435, 439 (W.D. Ky. 1994). In the Sixth Circuit, a three-part test governs whether the statute of limitations should be tolled due to a defendant's alleged wrongdoing: (1) the defendant must have wrongfully concealed his actions; (2) the plaintiff must have failed to discover the operative facts that form the basis of his lawsuit within the limitations period; and (3) the plaintiff must have exercised due diligence prior to discovering the operative facts. *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1001-02 (6th Cir. 1994); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). Furthermore, the defendant's conduct must have been the reason that the plaintiff failed to proceed with legal action. *Blanton*, 99 F. Supp. 2d at 804 (quoting *Reuff-Griffin Decorating Co. v. Wilkes*, 191 S.W. 443, 446 (Ky. 1917)).

Defendants respond that the date of discovery rule precludes the application of equitable tolling. Under Kentucky law, an action does not accrue until a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact that he is injured, but also that the defendant's conduct may have caused his injury. *Hazel*, 863 F. Supp. (citing *Perkins v.* 808 S.W.2d at 819); *Louisville Trust Co. v. Johns-Manville Prods.*, 580 S.W.2d 497, 501 (Ky. 1979) (citation omitted)). The same principle applies under federal law, which dictates when the statute of limitations begins to run on a § 1983 claim: the § 1983 statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001); *see also Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). As Defendants note, plaintiffs must exercise reasonable care and diligence in pursuing a cause of action. An individual plaintiff's obliviousness to his cause of action will not toll the limitations period; rather, the analysis hinges upon whether a reasonable

person using ordinary diligence would have discovered the cause of action. *Greywolf v. Roman Catholic Diocese of Covington*, 2011 WL 3361342, at *3 (Ky. Ct. App. 2011).

Arguing that no genuine issue of material fact exists as to this matter, Defendants cite *Greywolf* and *Moyers v. Roman Catholic Bishop of Louisville*, No. 2004-CA-001886-MR, 2005 WL 3116116, at *5 (Ky. App. Nov. 23, 2005), two cases concerning the statute of limitations in lawsuits raised by victims of childhood sexual abuse. *Greywolf* concluded that the plaintiff failed to prove that he acted with reasonable care and diligence to discovery his potential claim during the twenty-seven years after the alleged abuse occurred. The Kentucky Court of Appeals noted the substantial news coverage of the scandal, including "extensive publicity" in the local area concerning abuse at the church where the plaintiff was abused. *Id.* at *1. The court concluded that given this information, the plaintiff had adequate notice and should reasonably have known of his potential claim. The same result inured in *Moyers*: because the victim had access to widespread publicity concerning the Catholic Church's cover-up of its knowledge of abuse—specifically including that of her alleged assailant—she should reasonably have discovered the facts of the Church's concealment. 2005 WL 3116116 at *5-6.

Here, Defendants insist that similarly pervasive media coverage provided Plaintiffs, or would have provided a reasonable person, with notice that they may have had a claim against Defendants. They contend that upon Duncan's July 12, 2012, arrest for tampering with physical evidence, Plaintiffs should have realized their cause of action. (Docket No. 28-1.) Emphasizing the ongoing local coverage of Duncan's arrest and plea, they provide headlines of thirteen newspaper articles published in Oak Grove's local newspaper between July 2012 and March 2013. But to the extent that the articles are relevant and their contents discernable,[3] they are devoid of information suggesting that Duncan and Carter caused Candida Belt's death. Instead, they concern only Duncan's arrest and subsequent plea to tampering with

---

[3] At least one of the articles that Defendants have provided appears to have no connection to the matter at hand: the document entitled Exhibit J discusses a guilty plea in an unrelated case. (*See* Docket No. 22-11.) Moreover, the Court is unable to determine the complete substance of the majority of Defendants' exhibits, as they provide only headlines and the first three to four lines of the articles. The remainders of these articles are protected by a paywall.

physical evidence; none appears to mention Carter at all. (*See* Docket Nos. 22-4 through 22-16.) Although the articles emphasize the mishandled investigation, they in no way connect either Defendant to the murder itself. To the contrary, a story published shortly after Duncan's arrest notes that the field of suspects remained open: "'Everybody is a suspect,' [a Christian County Sheriff's Office detective] said. 'Nobody will be cleared until the case is solved.'" (Docket No. 22-7 at 3.) The news stories determinative in *Greywolf* and *Moyers* reported the crimes that were the basis of those plaintiffs' claims. Here, however, the articles are silent as to who caused Candida Belt's death.

Defendants further provide certain excerpts of Plaintiffs' deposition testimony in furtherance of their argument. Chris Belt testified that his mother died when he was five years old. (Docket No. 22-17 at 3.) The television series *Unsolved Mysteries* featured the Oak Grove murders when Chris was between ten and twelve years old; he chose not to view this episode. (Docket No. 22-17 at 5.) Chris testified that although he continued to "look online sometimes" for information regarding his mother's death, his efforts were renewed when his brother began to ask questions about their mother. (Docket No. 22-17 at 6.) In November 2013, Belt learned from a newspaper article that Defendants had been indicted for his mother's murder. (Docket No. 22-17 at 5.)

Mychal Denale Davis testified that when he was young, he found an article concerning Candida Belt's death that had been clipped from a newspaper. (Docket No. 22-18 at 2.) In 2012 or 2013, he learned from his birth certificate that Candida Belt was his biological mother. (Docket No. 22-18 at 3.) At deposition, he testified that he did not recognize Defendants' names and did not associate them with his mother's death. (Docket No. 22-18 at 4.)

As discussed above, the Court finds that outstanding questions of fact remain as to whether Chris Belt and Mychal Denale Davis diligently pursued their claims. The provided deposition testimony does not conclusively establish when a reasonable person in the brothers' positions should have learned of their claims. Moreover, while Defendants opine that "both men had knowledge that something was going on

several years ago but chose not to do anything about it," (Docket No. 28-1 at 12), they offer no caselaw or argument discussing how Plaintiffs fell short of the required diligence.  The attached exhibits are not conclusive as to when Plaintiffs should have had knowledge that Defendants caused their mother's death.

The Court concludes that whether Plaintiffs had the requisite knowledge under the discovery rule is a question of fact better reserved for trial, or upon motion if there is further discovery.  On a motion for summary judgment, the Court must construe all facts in a light most favorable to the non-movant.  At this early stage, it appears that equitable tolling could save Plaintiffs' claims.  *See, e.g.*, *St. Clair v. Bardstown Transfer Line*, 221 S.W.2d 679 (Ky. 1949) (tolling the statute of limitations in a wrongful death case arising from a hit-and-run accident wherein the defendant failed to report the accident and concealed the identity of the vehicle's owner and operator).  The Court anticipates that the details of Duncan's alleged concealment and of Plaintiffs' knowledge will be clarified as additional evidence is developed.  In the meantime, these outstanding questions of fact provide reasonable grounds to dispute the point in time that Plaintiffs should have discovered their claims.

## **ORDER**

Having considered the parties' arguments and exhibits and being otherwise sufficiently advised, the Court hereby DENIES Defendants' Motion to Dismiss, (Docket No. 22).